# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN ANTONIO SALINAS, | Case No. 1:24-cv-01344-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| FRANK BISIGNANO,<br>Commissioner of Social Security[1], | |
| Defendant. | (Doc. 1) |

## I.  INTRODUCTION

Plaintiff Juan Antonio Salinas ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.  FACTUAL BACKGROUND

On June 15, 2022, Plaintiff protectively filed a claim for DIB payments, alleging he became disabled on February 4, 2020, due to lower back pain, shoulder pain, neck pain, and

---

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (*See* Doc. 7.)

1  depression. (Administrative Record ("AR") 17, 69, 70, 90, 91, 220.)

Plaintiff was born in March 1976 and was 43 years old on the alleged onset date. (AR 29, 69, 90, 226, 267, 270.) He has a high school education, and previously worked as a garbage truck driver. (AR 28, 41, 85, 106, 221.)

### A.  Relevant Evidence of Record[3]

In July 2020, an MRI study of Plaintiff's right shoulder revealed persistent high-grade partial to full-thickness tear of the interior supraspinatus at its insertion without significant change; intact rotator cuff tendon; persistent high-grade partial to full-thickness SLAP tear; adhesive capsulitis; and mild subacromial/subdeltoid bursal fluid compatible with bursitis. (AR 306–307.) An MRI study of Plaintiff's lumbar spine taken in April 2021 revealed multilevel degenerative change without significant narrowing of the central canal or neural foramina. (AR 308–309.)

In April and May 2021, Plaintiff complained of pressure-like and frequent pain in his posterior region that is exacerbated by bending and sitting and causes increased numbness down his legs. (AR 343, 348, 416, 419.) Physical examination showed back abnormality on palpation. (AR 344, 349, 417, 420.) He was diagnosed with lumbar radiculopathy. (AR 345, 350, 418, 421.)

Plaintiff complained in July 2021 of moderate to severe dully achy pain in his lumbar spine radiating down to both legs. (AR 405.) On examination, Plaintiff showed limited range of motion and tenderness to palpation. (AR 407.) Lumbar radiculopathy diagnosis was noted. (AR 407, 408.)

In September 2021, Plaintiff complained of sharp and frequent pain in his lumbosacral region that is exacerbated by lifting and bending. (AR 313, 316, 319, 402, 762.) On examination, musculoskeletal abnormalities were noted. (AR 314, 317, 320, 403, 763.) Plaintiff's diagnosis of lumbar radiculopathy was noted. (AR 314, 315, 317, 318, 320, 321, 403, 404, 763, 764.)

In April 2022, Plaintiff presented to Curtis Collins, D.C., of Envista Medical Neck & Back Center ("Envista") complaining of low back pain, neck pain, bilateral leg pain, and left-hand numbness. (AR 658–61.) Dr. Collins noted objective findings of "vertebral subluxations" that

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

2

were "found by palpation or muscle weakness." (AR 661.) Plaintiff's diagnosis of cervicalgia ("M542") was noted. (AR 658–61.)

Treatment notes from Envista from March and May 2022 documented Plaintiff's diagnoses of cervicalgia and low back (lumbar) pain. (AR 507–12.) Plaintiff's diagnosis of lumbar pain was also noted in June and August 2022, during which time he received trigger point injections. (AR 513, 683, 812, 814.)

In June 2022, Plaintiff presented for treatment of back and neck pain. (AR 719–23.) He was assessed with cervicalgia and moderate lumbar degenerative disc disease. (AR 722.) MRIs of Plaintiff's cervical spine and lumbar spine were ordered to "reassess degenerative changes and disc herniations [at] L4-S1. (AR 722.) An MRI of Plaintiff's cervical spine taken that same month revealed mild straightening of the cervical lordosis; Schmorl's nodes at C3 down through C5; mild loss of vertebral body height at C3 through C6; mild loss of disc height at C2–C3 and C3–C4; disc protrusion at C3–C4 with concurrent bilateral and uncovertebral joint hypertrophy, as well as severe right greater than left neural foraminal narrowing and associated compression of bilateral exiting nerve root and annular fissure; disc protrusion at C4–C5 with concurrent bilateral and uncovertebral joint hypertrophy and bilateral facet joint arthrosis with severe bilateral neural foraminal narrowing and associated compression of bilateral exiting nerve root; disc protrusion at C5–C6 with joint hypertrophy and bilateral facet joint arthrosis, mild left neural foraminal narrowing, annular fissure; disc protrusion at C6 – C7 with mild left neural foraminal narrowing and annular fissure; and disc protrusion at C7–T1 with moderate right neural foraminal narrowing and associated indentation of right exiting nerve root with annular fissure. (AR 802.)

An MRI of Plaintiff's lumbar spine also performed in June 2022 revealed grade I posterior listhesis of L1 on L2 with associated bilateral facet arthrosis; mild straightening of the lumbar lordotic curvature; modic type II degenerative changes at L2 and L3, Schmorl's nodes at T12 down through S1, except L3; disc desiccation from L1 through S1 except L3–L4, loss of disc height at L1–L2, L4– L5, and L5–S1; disc protrusion at L1 through S1 with bilateral facet hypertrophy on left and bilateral lateral recess stenosis and annular fissure; and disc protrusion and associated abutment on bilateral transiting nerve root at L4–L5 and L5–S1. (AR 803.)

3

Plaintiff underwent epidural steroid injections in his lumbar and cervical spine in August, September, and November 2022, during which his diagnoses of cervicalgia and lumbar pain were noted. (AR 723–42, 772.) In September 2022, Dr. Collins treated Plaintiff for low back pain, neck pain, bilateral leg pain, and bilateral hand numbness. (AR 838–39.) Plaintiff's diagnoses of lumbar pain ("M5450"), lumbar radiculopathy ("M5416"), and cervicalgia ("M542") were noted. (AR 838–39.)

In January 2023, Plaintiff attended a follow up visit to treat his neck pain. (AR 771–77.) His June 2022 MRI resulted were reviewed, and diagnoses of cervicalgia, lumbar pain, and lumbar radiculopathy were noted. (AR 775–76.) At follow up appointments to treat his diagnosed cervicalgia, low back pain, and lumbar radiculopathy in March, July, and August 2023, and January 2024, Plaintiff reported minimal improvement with treatment. (AR 778–84, 792–811.)

Dr. Collins completed a "Physical Medical Source Statement" form in March 2024. (AR 757–760.) Dr. Collins noted Plaintiff's diagnoses of low back pain (M54.50), radiculopathy of the lumbar region (M54.16), and cervicalgia (M54.2), and the "clinical findings and objective signs" supporting his opinions were that the "exam findings were consistent with complaints and MRI report." (AR 757.) He opined that Plaintiff could rarely lift and carry 10 pounds and never lift and carry 20 pounds or more; he could rarely twist, stoop, crouch, climb stairs, climb ladders; he could perform grasping 15 percent of the workday with the right hand and 25 percent of the workday with the left hand; he could perform fine manipulation 15 percent of the workday with the right hand and 35 percent of the workday with the left hand; he could reach in front of his body 10 percent of the workday with the right arm and 20 percent of the workday with the left arm; and he could reach overhead 20 percent of the workday with the right arm and 40 percent of the workday with the left arm. (AR 758.) Additionally, Plaintiff would be off task 25 percent or more of the workday due to symptoms interfering with concentration and attention; and he was incapable of even "low stress" work. (AR 758.) Dr. Collins further opined that Plaintiff could sit for 15 minutes at a time and stand for 15 minutes at a time; could sit and stand/walk for less than two hours, each, in an eight-hour day; and he would be absent more than four days per month. (AR 759.) Additionally, Plaintiff needed the ability to shift at will from sitting, standing, and walking,

he needed to walk for five minutes every 15 minutes, and he needed three to four unscheduled breaks per day lasting 20 to 30 minutes. (AR 759.) He also needed to elevate his legs 15 to 50 degrees for 20 to 40 percent of an eight-hour day. (AR 759.)

**B.   Administrative Proceedings**

The Commissioner denied Plaintiff's applications for benefits initially on October 17, 2022, and again on reconsideration on February 13, 2023. (AR 17, 111–115, 123–28.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 129–30.) At the hearing on October 25, 2023, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions. (AR 40–59.) A Vocational Expert ("VE") also testified at the hearing. (AR 59–67.)

**C.   The ALJ's Decision**

In a decision dated December 19, 2023, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 17–30.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 19–30.) The ALJ decided that Plaintiff meets the insured status requirements of the Act through December 31, 2026, and he had not engaged in substantial gainful activity since February 4, 2020, the alleged onset date (step one). (AR 19.) At step two, the ALJ found Plaintiff's following impairments to be severe: degenerative disc disease of the cervical spine and lumbar spine; degenerative joint disease of the right shoulder with osteoarthritis, adhesive capsulitis, superior labral anterior posterior (SLAP) and anterior supraspinatus tears of the right shoulder; obesity; and obstructive sleep apnea. (AR 19–20.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 20.)

The ALJ assessed Plaintiff's residual functional capacity (RFC)[4] and applied the

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§] 404.1567(b) except he can lift/carry 20 pounds occasionally and 10 pounds frequently, sit for at least 6 out of 8 hours and stand/walk for about 6 out of 8 hours. He can occasionally climb, stoop, kneel, crouch, and crawl, and he can frequently balance. He can frequently reach laterally and in the front, and push/pull with the right upper extremity. He can occasionally reach overhead with the right upper extremity. He can frequently use the bilateral lower extremities and bilateral upper extremities for pushing and pulling. He should avoid concentrated exposure to dangerous workplace hazards such as exposed moving machinery and unprotected heights, and vibration.

(AR 22–27.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms [,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 22.)

The ALJ determined that Plaintiff could not perform his past work (step four), but that, given his RFC, he retained the capacity to perform a significant number of other jobs in the local and national economies, including laboratory sample carrier, a collator operator, and a router (step five). (AR 28–30.) Ultimately, the ALJ concluded that Plaintiff was not disabled at any time from February 4, 2020, the alleged onset date, through the date of the decision. (AR 30.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on September 3, 2024. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.   LEGAL STANDARD

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

6

be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.   Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in

7

the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,' "and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 930 F.3d 1141, 1153–54 (9th Cir. 2020). "This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g., Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

# IV. DISCUSSION

Plaintiff contends that his RFC is not supported by substantial evidence because the ALJ did not adequately evaluate the supportability of Dr. Collins' opinion. (Doc. 11.) The Court agrees with Plaintiff that the ALJ reversibly erred when they failed to address adequately the supportability of Dr. Collins' opinion, resulting in an unsupported RFC, and will remand on that basis.

## A. Legal Standard

Plaintiff's claim for DIB is governed by the agency's revised regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. § 404.1520c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. § 404.1520c(a)–(b).

The Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it

9

finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

> As the Ninth Circuit also observed,
>
> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id*. § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors.

*Woods*, 32 F.4th at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id*. (quoting § 404.1520c(b)(3)). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id*. Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision, even in the discussions required by 20 C.F.R. § 404.1520c. *See* 20 C.F.R. § 404.1520b(c)(3).

With these legal standards in mind, the Court reviews the weight given to Dr. Collins' opinion.

**B.   Analysis of Dr. Collins' Opinion**

The ALJ did not find Dr. Collins' opinion persuasive because:

> it is not consistent with the opinion of Dr. Sanchez, the state agency medical consultants, or Dr. Wagner. The evidence as a whole shows that [Plaintiff] does not use an assistive device, he is had not had any significant problems with standing and walking; he did not have findings to support significant limitations in fine and gross manipulation, and there is no support from any other treating or examining medical providers that support absences of more than four times a

month and off-task behavior 25 percent of the workday.

(AR 28.)

Plaintiff does not meaningfully challenge the ALJ's consistency findings (*see* Doc. 11 at 17–19). *See Carmickle v. Comm'r of Soc. Sec. Admin*., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to consider issues not raised with specificity in plaintiff's opening brief); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). Instead, he criticizes the ALJ's supportability analysis, or lack thereof, of Dr. Collins' opinion. (Doc. 11 at 17–19.)

Regarding supportability, the ALJ should consider the extent to which a medical source supports his own opinion and explains the objective medical evidence. 20 C.F.R. § 404.1520c(c)(1) ("Supportability examines the relevant objective medical evidence and supporting explanations **presented by the source**") (emphasis added); *see also Acosta Cuevas v. Comm'r of Soc. Sec*., No. 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021) (the supportability inquiry is "geared toward assessing how well a medical source supported and explained" their opinion). Here, the ALJ erred by failing to discuss the strength of the evidence underlying Dr. Collins' conclusions. In declining to find the opinion persuasive, the ALJ found that it was not consistent with the other medical opinion evidence and was not supported by findings "from any other treating or examining medical providers." (AR 28.) But Dr. Collins did not cite any medical opinions or findings from other medical providers in support of his opinion. He instead relied on his own examination findings, along with Plaintiff's diagnoses and MRI reports. (AR 757.) Other than mentioning the fact that Dr. Collins relied on this evidence (AR 28), the ALJ failed to discuss this evidence and, more importantly, the extent to which it actually supports the opinion, including Plaintiff's established diagnoses of low back pain (AR 513, 683, 723–42, AR 775–76, 772, AR 778–84, 792–811, 812, 814, 838–39), lumbar radiculopathy (AR 314, 315, 317, 318, 320, 321, 345, 350, 403, 404, 407, 408, 418, 421, 763, 764, 778–84, 792–811, 838–39, ), and cervicalgia (AR 507–12, 658–61, 722, 723–42, 772, 775–76, 778–84, 792–811, 838–39); Dr. Collins' records of treatment of Plaintiff for low back pain, neck pain, bilateral leg pain, and bilateral hand numbness and examination findings of "vertebral

11

subluxations . . . found by palpation or muscle weakness" (AR 658–61, 838–39); shoulder MRI results showing persistent high-grade partial to full-thickness tears, adhesive capsulitis, and bursitis (AR 306–307); lumbar MRI results showing multilevel degenerative changes, listhesis, disc desiccation, disc protrusion, and stenosis (AR 308–309, 803), and cervical MRI results showing disc protrusion, severe bilateral neural foraminal narrowing, and compression of bilateral exiting nerve root (AR 802).[5]

As has been seen, the ALJ's discussion of Dr. Collins' opinion appears directed solely to the consistency factor and does not discuss the supportability factor. District courts in the Ninth Circuit have consistently found error when the ALJ fails to articulate how they considered both the consistency and supportability as required under the regulations and Ninth Circuit case law. *See Hiten v. Kijakazi*, No. 1:22-cv-00473-JLT-BAM, 2023 WL 5806452, at *5–6 (E.D. Cal. Sept. 7, 2023) (collecting cases noting the ALJ must explain how both supportability and consistency factors were considered in determining the persuasiveness of an opinion.) While Defendant attempts to provide reasons why the ALJ could have found that Dr. Collins' opinion was not supported by the objective medical evidence he cites (*see* Doc. 15 at 7–8), this is the sort of *post hoc* rationale that is impermissible in the Social Security context. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts."); *Stout v. Comm'r Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir. 2006) (a reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the ALJ himself); *see also Walker v. Comm'r of Soc. Sec.*, No. 2:22-CV-01871-EJY, 2024 WL 64784, at *4 n.4 (D. Nev. Jan. 4, 2024) ("In response to Plaintiff's motion, the Commissioner specifically addresses the supportability and consistency factors and provides citations to the record. Unfortunately these are *ad hoc* rationales the Court cannot consider").

Because the ALJ did not address, explain, or otherwise articulate how they considered the factor of supportability, the Court concludes that the ALJ erred in discounting Dr. Collins' opinion. *See McKinsey v. Comm'r of Soc. Sec.*, No. 1:24-CV-00113-HBK, 2025 WL 830078, at

---

[5] Earlier in the decision, the ALJ specifically acknowledges that "[t]he MRIs of [Plaintiff's] neck and back do show significant degenerative changes including some abutment of lumbar spine nerve roots." (AR 26.)

\*4–5 (E.D. Cal. Mar. 17, 2025) (ALJ erred by "entirely fail[ing] to consider the extent to which any objective evidence and explanations presented by Dr. Stinson support her opinion as required when considering the supportability factor."); *Schmitzer v. O'Malley*, No. 1:22-CV-1038 JLT BAM, 2024 WL 4345772, at \*5 (E.D. Cal. Sept. 30, 2024) (finding error in the supportability discussion where "the ALJ did not make any findings as to what extent—if any—Dr. Pietruszka supported the limitations identified in" the opinions and "failed to explain to what extent Dr. Pietruszka's own treatment records did not support his opinions."); *Katherine D. v. Comm'r, Soc. Sec. Admin.*, No. 6:20-CV-1920-MO, 2024 WL 244625, at \*6 (D. Or. Jan. 23, 2024) ("Regarding 'supportability,' the ALJ erred by failing to discuss the strength of the evidence underlying Dr. Hallenburg's conclusions."); *Ann M. v. Kijakazi,* No. 2:23-CV-01081-MAA, 2024 WL 39193, at \*5 (C.D. Cal. Jan. 3, 2024) (finding a supportability analysis insufficient where "the ALJ did not explain why she found [the medical] opinions not supported, nor did she cite any findings in [the] treatment notes that demonstrate a lack of support"); *see also Suzi Marie H. v. O'Malley*, No. 3:22-cv-01963-WQH-AHG, 2024 WL 965233, at \*8 (S.D. Cal. Mar. 5, 2024) ("[M]erely noting that [an] opinion is 'unsupported by the objective evidence' without any citations to [] treatment notes is insufficient" consideration of the supportability factor.). Moreover, because error in the treatment of a medical opinion impacts the RFC determination, the Court declines to find substantial evidence supports the RFC. *See Garmany v. O'Malley*, No. 1:23-CV-00607-HBK, 2024 WL 3105824, at \*6 (E.D. Cal. June 24, 2024) (errors in addressing medical opinion evidence "calls into question whether the assessed RFC . . . [is] supported by substantial evidence").

**C.     Harmless Error Analysis**

The ALJ's failure to consider meaningfully the supportability of Dr. Collins' opinion is not harmless. Errors are harmless when a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Social Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Here, the VE testified that the addition to Plaintiff's RFC of absenteeism of two days per month due to medical issues would preclude all work. (AR 65–66.) The Court therefore cannot

13

"confidently conclude" that "no reasonable ALJ" considering Dr. Collins' opinion could have reached a different disability determination. *See David C. v. Comm'r of Soc. Sec.*, No. 23-CV-0655-WQH-MMP, 2024 WL 3596856, at *12 (S.D. Cal. July 31, 2024) (error not harmless where the Court finds the ALJ erred by failing to address adequately the supportability factor when evaluating a medical opinion); *see also Suzi Marie H.*, 2024 WL 965233, at *14 (determination that medical opinions were unpersuasive without providing an explanation supported by substantial evidence was "not inconsequential since it could have impacted the final RFC.").

### D.  Remand for Further Proceedings

The decision whether to remand a matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Notably, except in rare instances, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).

Here, the Court finds, and Plaintiff agrees (*see* Doc. 11 at 20), that remand for additional proceedings is necessary because the supportability of the medical opinion of Dr. Collins must be analyzed further before a determination of disability may be made.[6]  *See* 20 C.F.R. § 404.1520c(c)(2); *see also Cesar C. v. Dudek*, No. 1:24-CV-03177-EFS, 2025 WL 1065959, at *10 (E.D. Wash. Apr. 9, 2025) (remanding for further proceedings where the ALJ "failed to address the supportability of [medical] opinions in any meaningful way"); *David C.*, 2024 WL 3596856, at *12 (same); *cf. Emily B. v. Kijakazi*, No. 4:20-CV-05174-SMJ, 2022 WL 17224299, at *6 (E.D. Wash. Sept. 14, 2022) (observing that the revised regulations rejected application of the Ninth Circuit's "credit-as-true" doctrine to medical opinions and the commentary expressly stated: "it is never appropriate under our rules to 'credit-as-true' any medical opinion").

### V.  CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by

---

[6] As to the ultimate outcome of Plaintiff's claim, the Court expresses no opinion as to the level of persuasiveness that should be ascribed to Dr. Collins' opinion. Nor does the Court express what Plaintiff's RFC ultimately should be. These are for the ALJ to decide. *Ford*, 950 F.3d at 1154.

substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Juan Antonio Salinas against Defendant Frank Bisignano, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **August 11, 2025**                    /s/ *Sheila K. Oberto*
                                                            UNITED STATES MAGISTRATE JUDGE